Smitherman, Tucker & Mason, of Shreveport, for plaintiff and appellee.

B. H. Lichtenstein, of Shreveport, for defendant and appellant.

O'NIELL, C. J.   The defendant has appealed from a judgment of separation from bed and board.   The cause for the separation was cruel treatment on the part of the defendant, of such a nature as to make it intolerable for the plaintiff to live with him.   On two occasions he abused her mercilessly, and on one of those occasions slapped her and threatened to kill her.   She left in great fear of him, and has been afraid ever since to return.   His defense is that his anger and abuse of his wife was provoked by a grave indiscretion on her part.   There is some truth in the plea, but we are not prepared to say that the district judge erred in his finding that the provocation was not justification for the defendant's cruelty towards his wife.   It is now nearly three years since she left him, and it is not more likely now that they would become reconciled without a decree of separation than with one.   There is no question of law in the

case; and the record does not disclose that the district judge was in error as to the facts.

The judgment is affirmed.

OVERTON, J., dissents.

(123 So. 639)

No. 29960.

STATE v. LANGE.

In re LANGE.

June 17, 1929.

G. Wray Gill, of New Orleans, for relator. Eugene Stanley, Dist. Atty., of New Orleans, for the State.

OVERTON, J. William P. Lange is charged with having murdered Edward Lafferanderie on January 29, 1929. He was arraigned and pleaded not guilty. Thereafter he filed, through his counsel, a motion, suggesting to the court that he was insane at the time of the commission of the crime, and that he was still insane. He prayed for the appointment of a commission to inquire into his present sanity and into his sanity at the time of the commission of the offense, and to make report to the court, pursuant to articles 267 to 272, inclusive, of the Code of Criminal Procedure of this state.

The reason why defendant and relator did not apply for the appointment of a lunacy commission, pursuant to the provisions of Act No. 17, Ex. Sess. of 1928 is that, as appears from his motion for the appointment of the commission, he considers that act unconstitutional, because it makes the report of the commission final and conclusive, and deprives him of his constitutional right of trial by jury on such issue; because it seeks to delegate to a commission judicial powers belonging exclusively to a judicial tribunal, and deprives him of his constitutional right to a trial by jury on a question of fact directly pertaining to his guilt or innocence, and because it deprives him of the right to compulsory process for the attendance of his witnesses to testify to matters and things directly pertaining to his guilt or innocence. These grounds of attack are repeated in defendant's and relator's application to this court for remedial writs, and are there supplemented by the additional ground that Act No. 17 deprives him of due process of law.

The trial judge overruled defendant's motion for the appointment of a commission under the Criminal Code. He, however, appointed one under the provisions of Act No. 17, Ex. Sess. of 1928, holding that this act governed the matter. It may be said, however, that in so proceeding he considered the constitutionality of Act No. 17 doubtful, but deemed it best so to rule and permit the question to come to this court.

Act No. 17 does not affect article 267 of the Code of Criminal Procedure. The article is the first one in the chapter on the plea of insanity, and provides that whenever insanity shall be relied upon either as a defense or as a reason for defendant's not being presently tried, the plea shall be set up as a separate and special plea, and shall be filed, tried, and disposed of prior to the trial of the plea of not guilty.

The article of the Code (amended and re-enacted by Act No. 17) is article 268. This article in its general outline provides for the appointment of a lunacy commission to consist of the coroner of the parish, and the superintendents of both of the state's hospitals

for the insane, with the right in them to designate others to act in their places. The commissioners are required to meet at the parish seat, and inquire into the sanity of the accused. The article then provides what shall be done if the report be that the accused is presently insane, or was insane at the time of the commission of the crime, and further provides that, if the report be that he is presently sane and was sane at the time of the commission of the crime, the trial of the plea of insanity shall be proceeded with.

Act No. 17 Ex. Sess. of 1928, the act under attack, besides amending and re-enacting article 268 of the Criminal Code, repeals specifically articles 269, 270, 271, · 272, and 273 thereof, which comprise the remaining articles of the Code on the pleas of insanity. Article 269 provides that every plea of insanity shall be triable by the judge without a jury, or by a jury of 5, or by one of 12, according as to how the charge against the accused is triable. Article 270 provides what shall be done with the accused, if upon the trial of his plea of present insanity he be found insane, and article 271 provides that, if, upon the trial of the plea of insanity as a defense, the accused be found insane at the time of the commission of the crime, he shall be committed to a criminal ward of an insane asylum, until discharged in due course of law. Article 272 prescribes the due course of law mentioned in the preceding article, and article 273, the last of the repealed articles, provides that no ruling made on the plea of insanity shall be reviewable before sentence, either by appeal or by supervisory writs.

Omitting the title, Act No. 17, Ex. Sess. of 1928, the act under attack, reads as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That Art. 268 of the Code of Criminal Procedure of the State of Louisiana be amended and re-enacted so as to read as follows:

" 'Art. 268. Whenever any plea of insanity shall have been filed, the presiding judge shall at once notify in writing the Superintendent of the State Colony and Training School at Alexandria, Louisiana, the Superintendent of the Hospital for the Insane at Jackson and the Superintendent of the Hospital for the Insane at Pineville. The said Superintendents shall together form a Commission of Lunacy to inquire into the sanity of the accused; provided that each of said superintendents may designate and require to act in his place on said commission any competent physician.

" 'The presiding judge shall immediately after giving the above notice, direct the sheriff of the parish in writing, to convey and deliver the accused to the Criminal Department of the Insane at Jackson; and it shall be the duty of the sheriff to obey said order within ten days. The said sheriff shall be paid for said services as now provided for by law in cases of commitment of the criminally insane. The accused shall be kept under observation in said department for a period not to exceed forty days, during which time the said commission shall proceed with the investigation into the sanity of the accused and for the purpose shall have the right of free access to him at all reasonable times and shall have full power and authority to summon witnesses and to enforce their attendance. The said commission shall within ten days after the above period, make their report in writing to the said presiding judge.

" 'The findings of the commission or of a majority of its members shall, upon being filed in court, constitute the report of the commission of lunacy. If said report be that the accused is presently insane, or was insane at the time of the commission of the crime, he shall forthwith be committed to the criminal ward of a hospital for the insane, there to remain until discharged in due course of law.

But if the report be that the accused is presently sane and was sane at the time of the commission of the crime, said findings of sanity shall be final, and the accused shall be forthwith returned to the parish in which the offense was committed and tried upon the question of guilt or innocence, and insanity shall not thereafter be urged as a defense.

" 'Any person examined by the said commission of lunacy pursuant to the provisions hereof who is by said commission found to have been insane at the time of the commission of the act but presently sane shall be entitled to be discharged by the court upon the filing in court of said report.

" 'If the commission find that the accused was sane at the time of the commission of the crime, but is presently insane, he shall remain in said criminal ward until such time as his reason shall have been restored.'

"Section 2. That Articles Numbers 269, 270, 271, 272, and 273 of the Code of Criminal Procedure of the State of Louisiana are hereby repealed."

It is clear from the mere reading of Act No. 17 that it vests absolute power in the lunacy commission, created by it, to determine whether an accused is presently insane or whether he was insane at the time of the commission of the offense charged against him. As to his being presently sane, or as to his having been sane at the time of the commission of the offense, the absolute power of the commission to determine that fact, finally, is apparent from the provision of the act to the effect that, if the report of the commission be that the accused is presently sane and was sane at the time of the commission of the offense, he shall be tried upon the question of guilt or innocence, and insanity shall not thereafter be urged as a defense.

It is therefore clear that the act withdraws from the courts the power to determine the present sanity of those accused of crime, and it is equally clear that the act withdraws the right of those accused of crime to urge before the courts the defense of insanity, based upon the ground that they were insane at the time of the commission of the crime, and vests this power, with the final power of determination, in a lunacy commission. In other words, the right of those accused of crime to present the plea of present insanity to the courts, sitting with or without juries, according as to how the charge against them was triable, as provided in chapter 4, of the Code of Criminal Procedure, is withdrawn, and vested, with power to decide the plea finally, in a commission. Therefore, even the right of trying such pleas before the courts, sitting without juries, as it existed before the adoption of the Criminal Code at the regular session of 1928 is not sanctioned by the act. Likewise, the right of those accused of crime to present the defense of insanity, based upon the ground that they were insane at the time of the commission of the crimes, charged against them, before the courts, sitting with or without juries, according to the nature of the offenses charged against them, though by separate plea, and before trial on the plea of not guilty, as provided in chapter 4 of the Code of Criminal Procedure, is withdrawn, and vested, with the power of deciding the plea finally, in a commission. Even the right to present the plea of insanity as a defense on the trial of the plea of not guilty, before the courts alone, or before the courts, sitting with juries, according as to how the offense charged is triable, as was provided prior to the adoption of the Code of Criminal Procedure, is not sanctioned by the act.

The question is whether such procedure may validly exist under the Constitution of this state. The answer is, we think, that it may not. Article 7 of the Constitution of

this state creates courts. They, with certain exceptions, unnecessary to mention, are vested with criminal jurisdiction, and are supposed to be the exclusive arbiters of all criminal cases, arising under the laws of the state, unless it be such as come within the jurisdiction of courts-martial. The plea that one is presently insane, and should not be put upon his trial until his reason is restored, is an incident of a criminal case, and, under the Constitution, comes within the jurisdiction of the courts, as much so as the offense itself, which is charged, comes within it, and the determination of the plea may not be withdrawn from the courts and vested exclusively in a commission without doing violence to the Constitution. Also, the plea of insanity at the time of the commission of the crime is peculiarly a judicial question for the courts to determine. It is a defense to the crime itself, and, when maintained, entitles the defendant to an acquittal, though an acquittal, by reason of that plea, will result in his committal to the criminal ward of an insane asylum.

To vest the power of deciding finally the plea of insanity as a defense in a commission, thereby withdrawing its final determination from the courts, is not only violative of article 7 and section 6 of article 1 of the Constitution of 1921, but, in a case such as the present, is also violative of section 9 of article 1 and section 41 of article 7 thereof, relating to the right of trial by jury. There is no constitutional objection to trying the plea separately from the plea of not guilty, as was held in People v. Hickman (Cal. Sup.) 268 P. 909, and as virtually said in Wharton's Criminal Procedure (10th Ed.) vol. 2, p. 1815, § 1358, but where the offense itself is triable, under the Constitution, by jury, the accused has the constitutional right to have his defense of insanity tried by jury.

It might be said, however, that the submission to the people of this state of a constitutional amendment, providing for the adoption and promulgation of a criminal code (see appendix to Acts of 1928, p. 10, Act No. 262), which was approved by the people, authorized the Legislature, had it seen proper, in adopting the Code, to depart from the Constitution in the respects pointed out and found objectionable, and therefore the Legislature, in amending the Code, had the continuing right so to depart. However, there is nothing in the constitutional amendment, suggesting the granting of such a right. True, the amendment authorizes certain departures from the Constitution, but they relate to the manner of amending the draft of the Code, prepared by the code commission, and the manner of adopting and promulgating the Code.

Act No. 17 contains provisions that are constitutional as well as provisions which are not. The question now is whether to declare invalid the entire act, or only such parts as are unconstitutional. Where the constitutional parts of a statute are wholly independent of the unconstitutional parts, the constitutional parts will be permitted to stand and the unconstitutional parts will be rejected, but where the constitutional parts and the unconstitutional parts are so related that it is not to be presumed that the Legislature would have passed the one without the other, the entire act will be declared invalid. 36 Cyc. p. 976. The annulment of the parts found in the statute to be invalid will make drastic changes in the statute. Under the circumstances we think that the entire act should be declared invalid, leaving it to the Legislature, if it should deem proper, to pass another act at its next session. This ruling necessarily leaves intact chapter 4 of the Code of Criminal Procedure, relating to the plea of insanity.

For the reasons assigned, the order under

review is annulled and set aside, Act No. 17, Ex. Sess. of 1928 is declared invalid, and the trial judge is directed to proceed, in disposing of said pleas of insanity, under the provisions of chapter 4 of the Code of Criminal Procedure, relating to pleas of insanity.

O'NIELL, C. J., concurs in the ruling that "Act No. 17 of Ex. Sess. of 1928 is unconstitutional."

THOMPSON, J., concurs in the decree.