OVERTON, J.
 

 Defendant was indicted, for murder. He filed a plea of present insanity and also one of insanity at the time of the commission of the crime, and prayed for the appointment of a commission to inquire intq
 
 *523
 
 his sanity, under the Code.of Criminal Procedure. The court at first appointed a lunacy commission, under the provisions of that Code, hut later changed its order by appointing one, under Act No. 17, Ex. Sess. of 1928, which was passed after the adoption of the Code. Act No. 17 was later declared unconstitutional by this court in State v. Lange, 168 La. 958, 123 So. 639, and for that reason the order last named was rescinded, and a commission appointed under the Code of Criminal Procedure.
 

 The superintendent of the hospital for the insane at Jackson, who was appointed, as required by the Code, a member of the commission, was unable to act, and therefore, availing himself of article 268 of the Code of Criminal Procedure,, appointed Dr. C. Y. Unsworth, a well-known alienist, to act in his place. The commission was then composed of Dr. Unsworth, the superintendent of the hospital for the insane at Pineville, and the coroner of the. parish of Tangipahoa, the two latter having been appointed by the court, as directed by article 268 of the Code. A majority of the commission, so appointed, made the following report: “After repeated examination of the witnesses furnished us by both the state and the defense, also of the defendant, W. H. Burris, it is our opinion that said W. H. Burris was insane and irresponsible at the time of the commission of the offense charged against him. In regard to his present condition we find him sane.” The superintendent of the hospital for the insane at Pineville dissented from this report, he being of the opinion that relator was not only sane at the time of the examination, but also at the timé of the commission of the offense.
 

 After this report was made, following a futile attempt to bring the matter to this court, under its' supervisory jurisdiction, ‘ relator moved the district court to order him' sent to the East Louisiana hospital for the insane at Jackson. This motion was refused. Relator then, acting under articles 271 and 272 of the Code of Criminal Procedure, ruled the district attorney to show cause why he should not be discharged as sane. The trial judge refused to order the district attorney to show cause why relator should not be discharged, and refused to commit him to the insane asylum, and declared his intention of holding relator for trial by jury on the question of his guilt or innocence and of permitting him to urge any legal defense at the trial, including insanity. The district judge refused to grant either order, because of his doubts concerning the constitutionality of the articles of the Code, relative to the plea of insanity, and because he thought that the articles referred to do not cover the condi- • tions here met with.
 

 In his answer to the rule nisi, which was issued herein by this court, the district judge, who was the Honorable Columbus Reid, sets forth specifically his reasons for not granting the order, sending relator to the insane asylum, and for not granting the rule to show cause. Those reasons are substantially as follows: That the third paragraph of article 268 of the Code of Criminal Procedure is unconstitutional; that it is repugnant to' the objects of the Code, which were to secure a better and more certain administration of criminal laws and justice, for its effect is to break down and destroy any proper administration of such laws; that it is violative of section 9, art. 1, of the Constitution of 1921, guaranteeing a trial by jury, and of section 42 of article 7, prohibiting waiver of a trial by jury in cases where the punishment is necessarily at hard labor or death; that it is violative of section 41 of article' 7 of the Constitution 1921, which pro
 
 *525
 
 vides that all cases punishable by death or hard labor shall be tried by a jury; that it is violative of section 35 of article 7 of the Constitution 1921, which vests in the district courts unlimited and exclusive jurisdiction in criminal matters (except in misdemeanors where vested in city courts); that it is violad tive of section 35 of article 7 of the Constitution, which vests in the district courts jurisdiction in all suits involving personal status or rights, including interdiction, both civil and criminal; that it is violative of section 10 of article 7 of the Constitution 1921 (erroneously pleaded as section 2), which vests the Supreme Court with appellate jurisdiction in all interdiction matters, both criminal and civil; that he (the respondent judge) is without authority to consign a sane man to the insane asylum as a punishment, or merely for the purpose of compelling him to regain his liberty by means of a rule on the district attorney; that such an act, on his part, would be violative of the most elementary ideas of justice, and would be contrary to law and common sense; that the Code of Criminal Procedure has made no provision for a trial of the plea of insanity, where the commission finds the accused insane at the time of the commission of the crime or finds him presently insane; that article 269 of the Code is applicable only in case of a finding that the accused was sane at the time of the commission of the crime, and presently sane, according to the express provisions of article 268 of the Code, but that, in the event the commission finds the accused insane either at'the time of the crime or presently, there is no provision for a jury trial of the plea; and that, such being the case,' he (the respondent judge)'is of'the opinion'■ that the ease must be proceeded with under the laws in existence 'before the passage of ■ the Code, and that these laws, which are not in conflict with the provisions of the Code, are not repealed thereby, under the facts of this case.
 

 The articles of the Code of Criminal Procedure relative to the plea of insanity read as follows:
 

 “Art. 267. Whenever insanity shall be relied upon either as a defense or as a reason for defendant’s not being presently tried, such insanity shall be set up as a separate and special plea and shall be filed, tried and disposed of prior to any trial of the plea of not guilty, and no evidence of insanity shall be admissible upon the trial of the plea of not guilty.
 

 “Art. 268. Whenever any plea of insanity shall have been filed, the presiding judge shall at once notify in writing the Coroner of the Parish, the Superintendent of the Hospital for the Insane at Jackson and the Superintendent of the Hospital for the Insane at Pineville. The said Coroner and the said Superintendents shall together form a Commission of Lunacy to inquire into the sanity of the accused; provided that each of said Superintendents may designate and require to act in his place on said Commission any' competent physician.
 

 “The Commissioners, as soon as practicable after said notification, shall meet at the parish seat, and proceed with the investigation into the sanity of the accused, and, for that purpose, shall have the right of free access to him at all reasonable times and shall have full power and authority to summon witnesses and to enforce their attendance.
 

 “The findings of the Commission or of a majority of its members shall, upon being filed in court, constitute the report of the Commission of Lunacy. If said report be that the accused is presently insane, or was insane at the time of the commission of the crime, he shall forthwith be committed to the
 
 *527
 
 criminal ward of a hospital for the insane, there to remain until discharged in due course of law. But if the report be that the accused is presently sane and was sane at the time of the commission of the crime, the trial of the plea of insanity shall be proceeded with as provided in this Chapter.
 

 “Art. 269. Every plea of insanity shall be triable by the judge without a jury, or by a jury of five, or by a jury of twelve, according as the charge in the indictment is triable, and the same number of jurors concurring shall be necessary ■ to the finding of a verdict on this plea as would be necessary to a verdict on the charge in the indictment.
 

 “Art. 270. If upon the trial of the plea of present insanity the judge or the jury, as the case may be, shall find that defendant is presently insane, he shall be committed to the criminal ward of a hospital for the insane, there to await trial until such time as his reason shall have been restored; provided that the district attorney having charge of the prosecution, whenever he believes the defendant no longer insane, may have the question of insanity again determined in the same maner in which it was originally determined.
 

 “Art. 271. If upon the trial of the plea of insanity as a defense, the judge or the jury, as the case may be, shall find that, the defendant was insane, at the time of the commission of the crime, he shall be committed to the criminal ward of a hospital for the insane, there to remain until discharged in due course of law; provided that no person committed under the provisions of this article shall be released otherwise than as pointed out in the nest succeeding article.
 

 “Art. 272. Whenever it shall be alleged ' that any person committed to a hospital because insane at the time of the commission of the crime, has regained his reason, a rule to show cause why such person should not be released shall be taken upon and tried contradictorily with the district attorney of the parish from which such person shall have been committed, which rule shall be tried by the Judge, or by a jury of five, or by a jury of twelve, according as the charge in the indictment is triable, and the same number of jurors shall be necessary to the finding of sanity as would be necessary to a verdict on the charge in the indictment.
 

 “Art. 273. No ruling of the court made on the trial of any plea of insanity shall, before sentence, be reviewable by any other court, either under its appellate or supervisory powers.”
 

 . In considering the various grounds urged by the respondent judge for not granting either of the orders demanded by relator, we shall not consider them in the order in which they are stated above, which follows the order in which he has stated them, but shall consider them rather in inverse order.
 

 The last position taken by respondent is that the case against relator must be proceeded with under the law in existence before the enactment of the Code, which remains in force, since that law is not in conflict with the provisions of the Code, as relates to the present case, where the commission found the accused sane at the time of the investigation, but insane at the time of the commission of the crime. The law, as it stood prior to the adoption of the Code, required, in accordance with the common law of England, that insanity, as a defense, be tried under the plea of not guilty, and necessarily with it. Therefore respondent intends to try defendant on the plea of insanity as a defense at the same time that he tries him on the plea of not guilty, and this upon
 
 *529
 
 the theory that the Code does not conflict, in such a case as this, with the old method of trial.
 

 Our brother of the lower court has fallen into error in taking this position. The very first article of the Code, on the plea of insanity, article 267, prescribes that the plea of insanity, as a defense, shall be separately and specially pleaded, and disposed of prior to the trial of the plea of not guilty, and that, upon the trial of the plea of not guilty, evidence of insanity shall not be admissible. Therefore, by reason alone of the. provisions of article 267 of the Code it cannot be correctly said that the articles of the Code, relative to insanity as a defense, do not conflict with the method of procedure, as to that defense, existing prior to the promulgation of the Code. Moreover, the Code clearly provides what shall be done, as appears from the third paragraph of article 268 thereof, if the commission or a majority of its members report, as was the case here, that the accused is presently sane, but was insane at the time of the commission of the crime. The Code makes this clear, for it provides, in the paragraph cited, that: “If said report be that the accused is presently insane,
 
 or
 
 was insane at the time of the commission of the crime, he shall forthwith be committed to the criminal ward of a hospital for the insane, there to remain until discharged in due course of law.” (Italics ours.) The disjunctive “or,” which we have italicized, was placed between the words “presently insane,” and “was insane at the time of the commission of the crime,” for the obvious purpose of showing that the accused, even though the report be that he is presently sane, but was insane at the time of the commission of the crime, shall be sent to the criminal ward of an insane asylum and there kept until he be discharged in due course of law, and vice versa, that is, that, if he be reported sane at the time of the commission of the crime, but presently insane, he shall likewise be sent there and so kept.
 

 The interpretation that the 'accused should be sent to the criminal ward of an insane asylum, if reported insane at the time of the commission of the crime, but presently sane, is reinforced by article 271 of the Code. There it is provided that: “If upon the trial of the plea of insanity as a defense, the judge or the jury, as the case may be, shall find that the defendant was insane, at the time of the commission of the crime, he shall be committed to the criminal ward of a hospital for the insane, there to remain,” until discharged as provided in article 272 of the Qode. This means, in those eases, where the plea of insanity is urged as a defense only, and is prescribed upon the assumption that the accused concedes his present sanity. What shall be done if, upon the trial of the plea of present insanity, the judge or the jury, as the case may be, finds the accused presently insane, is prescribed by article 270 of the Code. Whenever an accused, it may be said here, has been committed to an insane asylum, because insane at the time of the commission of the offense, he cannot be released, as appears from article 272 of the Code, until it be found that he has regained his sanity by the judge or jury, according as to how the crime committed is triable, upon the trial of a rule filed by him. It may also be said, in this connection, that the Code contemplates that, whenever an accused has been reported insane at the time of the commission of the crime by the lunacy commission or upon the trial of the plea of insanity as a defense, had upon the finding of the commission that he was sane at the time of the commission of the crime, the judge or the jury, as the case may be, finds that he
 
 *531
 
 was insane at that time, the state is precluded from ever bringing the accused to trial on the indictment, or, in other words, from ever prosecuting the criminal charge, as much so, to say the least, as it would be barred from prosecuting a prescriptible offense, where it is found, before trial of the plea of not guilty, that the offense is prescribed. Code Cr. Proc. art. 8.
 

 A careful analysis of the articles of the Code, relative to insanity, will show that provision is made as to the method of procedure and as to what shall be done as to every responsive report that the lunacy commission may make. The general theory of these provisions, which is carefully worked out, is that the state cannot contest the correctness of the report of the commission, while, upon the other hand, an adverse report of the commission is never binding upon the accused, but the correctness of the r,eport is, in effect, tested before the judge sitting with or without a jury, according as to how the indictment itself is triable.
 

 The provisions of the Code, relative to the plea of insanity, are therefore in direct conflict with the law, which regulated the method of trial, where insanity was urged, and which existed prior to the adoption of the Code. Hence, unless the provisions of the Code are unconstitutional, they must be enforced as written, for they are the legislative will.
 

 We now approach the constitutional questions raised by the respondent judge. At the outset, we may say that the case of State v. Lange, supra, 168 La. 958, 123 So. 639, has no application here. There, the question was under which law the court should proceed in disposing of the plea of insanity— Act No. 17, Ex. Sess. of 1928, or the articles of the Code, it being , contended that the act of 1928 was unconstitutional, because it deprived the accused of his right of trial by jury, or by the court, when insanity was urged as a defense, and took away from him his constitutional right to be heard before the courts on the question of his present insanity, or upon insanity as a defense, and this court held that these contentions were correct, and declared the act of 1928 unconstitutional. But in the ease now before us the situation is different. Here we have a case in which the district court thinks it improper to carry out the report of a majority of the commission, or to comply with the mandates of the Code, in effect, because no provision is made for the state’s contesting before the court, sitting with or without a jury, the correctness of the report of the commission, and because the provisions of the Code violate certain provisions of the Constitution, relative to the jurisdiction of district courts in matters of interdiction, and certain provisions of that instrument, relative to the jurisdiction of this court in such matters, and are' repugnant to the very objects had in adopting the Code, at least so far as concerns the third paragraph of article 268 of the Code. It is needless to say that there is a marked distinction between the rights of the state and the rights of the accused in criminal cases.
 

 The articles of the Code, relative to the plea of insanity, do not violate section 9 of article 1 of the Constitution. 1921, relative to the-, right of trial by jury, in cases punishable at hard labor or with death. This section is a guarantee in favor of .the accused only, and not of the state. The state possesses no such guarantee. Under the Code, as we have had occasion to point out, in every instance where the report of the commission is unfavorable to the accused, he is given the right of trial by jury, where the indictment is so triable, and where, as provided in this section, the indictment is triable before the judge alone, then:
 
 *533
 
 before him, sitting without a jury, according to the constitutional guarantee. Nor do the provisions of the Code, relative to the plea of insanity, violate section 41 of article 7 of the Constitution 1921, erroneously pleaded as section 42 of article 7 thereof. This section, that is, section 41, provides, among other things, that: “All cases in which the punishment may not be at hard labor shall, until otherwise provided by law, be tried by the judge without a jury. Cases, in which the punishment may be at hard labor, shall be tried by a jury of five, all of whom must concur. to render a verdict; cases, in which the punishment is necessarily at hard labor, by a jury of twelve, nine of whom must concur to render a verdict; cases in which the punishment may be capital, by a jury of twelve, all of whom must concur to render a verdict.” The provisions of the Code relative to the plea of insanity do not conflict with this provision, for, as we have seen, in every instance in which the report of the commission is adverse to the accused, and in which the crime charged against him is punishable with death or at hard labor, he is given, on the plea of insanity, á trial by jury. Even more than this, he is given a trial by jury, in such eases, on the plea of present insanity, which is not included within the intendment of either section 9 of article 1 of the Constitution 1921, or of section 41 of article 7 thereof. It is true that the state is not given, when the report of the commission is adverse to it, a trial by jury, but the Constitution guarantees no right of trial by jury to the state. It is also true that section 41 of article 7 of the Constitution 1921 establishes a tribunal for the trial of criminal cases, in providing for trial by jury, which is as binding on the state as it is upon the accused. But this section, relates to the trial of criminal cases. The. proceedings.pf the lunacy eomniission inquir-. ing into the sanity Of the accused is not a trial, even of the plea of insanity, but is merely an investigation, made by a board, designated by law, into the sanity of the accused, followed by a report to the court, nor does the Code treat the investigation' as a trial, but only as a preliminary step to a possible trial, for it appears from the closing sentence of article 268, and from the context of all of the articles on insanity, that the trial of the plea-of insanity is to be proceeded with only in the event the report of the commission is that the accused is presently sane and was sane at the time of the commission of the crime, and then follows, in the succeeding article, the manner in which the plea is to be tried. It is also true, as we have had occasion to say, that, when the report of the commission is unfavorable to the state, it is bound by the report, and cannot contest its correctness. There are no constitutional objections to this. The Legislature, in the absence .of constitutional restrictions, has a clear right to fix the conditions under which the state may prosecute, and may provide for a board to ascertain whether those conditions exist.
 

 The provisions of the Code, under consideration, are not, as urged, violative of section 35 of article 7 of the Constitution 1921, vesting in district courts unlimited and exclusive original jurisdiction in all criminal cases, with certain minor exceptions. What we have said above, concerning the rights of the accused, when the report of the commission is unfavorable to him, and concerning the fact that the investigation of the com-, mission is not a trial, shows that the codal provisions do not violate section 35. They prescribe when a prosecution shall not be. had, but do not purport to withdraw anything from the jurisdiction of the district courts. Nor do these provisions .violate. this section of. the Constitution by., purporting .to with
 
 *535
 
 draw any of the jurisdiction of district courts over the civil rights of persons. The commission is convoked' by order of court, and, when the report is made, whatever it be, the court must act upon it, if favorable to the accused, by sending him to, the insane asylum; if unfavorable to him, by proceeding with the trial of the plea of insanity. There is no constitutional reason why the Legislature could not fix the effect to be given to the report, when it is favorable to the accused. Nor do these provisions contravene section 10 of article 7 of the Constitution 1921 by purporting to withdraw from this court any of its jurisdiction in interdiction suits. Unless we are gravely in error, this is too clear to require discussion.
 

 The objection that a district judge is without authority to commit a person to the insane asylum, when the commission reports that he is presently sane, but was insane at the time of the commission of the crime, cannot be sustained in view of the express provisions of the third paragraph of article 268 of the Code and those of article '271 thereof. The very purpose of the Code in ordering the accused, under those circumstances, committed to an insane asylum, is to remove him from society, as a menace, until it appears that he is sufficiently well to insure reasonably that his insanity will not return. The accused having been reported insane by the commission at the time he committed the crime, the law, based upon experience, requires that he be sent to the criminal ward of an insane asylum, and there kept until by the lapse of time and by observation- it appears that, with reasonable safety, he may be released.
 

 The objection that these provisions of. the Code are repugnant to the objects had in adopting a Code, in that their effect is not' to secure a. better and more certain administration of criminal justice, but to destroy the proper administration thereof, presents nothing for the courts to consider. As to whether these provisions are wise is a matter which addresses itself exclusively fo the Legislature. They are clear and constitutional, and it is the duty of the court to enforce them. In holding that they are constitutional, we must not be understood as holding that section 273 of the Code, which attempts to prohibit this court from reviewing, prior to sentence, a ruling of a district court, touching a plea of insanity, even under our supervisory jurisdiction, is constitutional. Pretermitting the question of the right to appeal, prior to sentence, our supervisory jurisdiction is vested in us by the Constitution, and we must look to that instrument to ascertain our right to exercise it. Section 2, art. 7, Const, of 1921.
 

 For these reasons it is ordered that the rule nisi, which issued herein, be made absolute, and accordingly that the respondent judge grant the order committing the relator herein to a criminal ward in the hospital for the insane at Jackson, to be there kept, until discharged as provided by law.
 

 O’NIELL, C. J., dissents, assigning reasons.